Ronald Shanko
In Care of
15320 May Hollow Road
Lower Lake, California [95457]

RECEIVED

APR = 8 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

APR X 8 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## In the District Court of the United States
## for the Northern District of California

Ronald Shanko,
Private Attorney
General, Plaintiff

Case No. 14-cv-05543-JST

vs.

**FIRST AMENDED
COMPLAINT FOR
DEPRIVATION
OF RIGHTS UNDER
COLOR OF
AUTHORITY
AND PETITION FOR
DECLARATORY
AND INJUNCTIVE
RELIEF**

LAKE COUNTY AKA COUNTY OF
LAKE, LAKE COUNTY
DEPARTMENT OF COUMMUNITY
DEVELOPMENT,
BRANDON HOLLERAN, in his
official and private capacity,
MICHAEL LOCKETT, in his
official and private capacity,
RICHARD COEL, in his
official and private capacity,
DOES 1-20 inclusive

Title 42, US Code,
Section 1983

Defendants

Trial by Jury Demanded

_____/

### I.    JURISDICTION

Complaint For Damages Page 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1. The District Court of the United States for the Northern District of California has jurisdiction over this action pursuant to, and jurisdiction is hereby invoked under, Title 28 USC Sec. 1331, Title 42, Section 1983, for a violation of Civil Rights and Article Three of the Constitution for the United States of America, of 1787, as described in the Commentaries on the Constitution, by Joseph Story, who states that Article Three of the United States Constitution provides for courts which are convened under the course of the common law. Also, this court has jurisdiction under Title 28 US Code, § 2201 and 2202. Additionally, Callan v. Wilson, 127 U.S. 540, (1888) "And as the guaranty of a trial by jury, in the third article, implied a trial in that mode, **and according to the settled rules of common law"**. This suit being authorized by the United States Constitution Article III. This is a civil rights action and a request for an order of cease and desist to redress the past deprivations and to prevent the further deprivation by Defendants and their agents, acting under the color (pretense) of state law, of Plaintiff's private rights, privileges, and immunities secured by the Constitution for the United States of America, specifically by the due process clause of the Fourteenth Amendment thereto, which invokes the due process clauses of the Fourth, Fifth and Fourteenth Amendments to said constitution upon the States and the federal government and guarantees to all private citizens the freedom to be free from unlawful seizures and arrests without probable cause and without a warrant supported by oath or affirmation, and the separate and, distinct common law jurisdiction of this Court in accord with the rules of the common law related to fiduciary duties. It should be understood that I have not authorized nor will I authorize a US Magistrate to rule in this matter or act in the capacity as an Article Three Judge.

## II. STATEMENT OF THE CASE

2. The Plaintiff asserts claims arising under the Constitution and laws of the United States, including specifically the due process clauses of the Fourth, Fifth, and Fourteenth Amendments. I also seek enforcement of my due process rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution for the United States of America and state law pursuant to the Separations of Powers Doctrine Under the California Constitution, see Strumsky v. San Diego, infra, requiring that administrative agencies cannot function in a judicial capacity.

3. The Defendant, RICK COEL, is preparing to violate the Fourth Amendment by directing his employees at the LAKE COUNTY DEPARTMENT OF COMMUNITY DEVELOPMENT, CODE ENFORCEMENT DIVISION, hereinafter Code Enforcement, BRANDON HOLLERAN, a building inspector and MICHAEL LOCKET, the Chief Building inspector to refuse to allow me to continue the building of my house, under existing building permits, and then to order private contractors to bulldoze the partially built structure. RICK COEL has been the head of his department for many years and has directed his employees to engage in the same kind of violation of peoples rights described herein dozens of times, especially with respect to demolishing people's homes. RICK COEL has thereby directed the activities of the employees in his department to violate the civil rights of many people in Lake County in substantially similar ways, thereby he has set custom and policy for his department to demolish people's homes and eliminate the property rights of people who are similarly situated. The ultimate goal for Code Enforcement when dealing with many of the people who apply for building permits, who clearly do not have the money to hire attorneys is to create an excuse for the "abatement

of a nuisance". Even when the land-owner victim bends over backwards to comply with unnecessary requests for compliance with Code Enforcement's whims that are not grounded in law or regulations, the building inspectors at Code Enforcement demand changes in building materials or impose unreasonable time tables for completing a task that is part of the permitting process, such as filing permits or completing engineering drawings and blue prints. They do this with the intention to force the land owner to their knees financially and forcing them to miss deadlines or fail to complete construction before the permits expire so that they can turn the project into a "Nuisance Abatement" and eventually make money for the Lake County government from the ultimate sale of the subject property, after they have bulldozed the house, liened the property and the property owner cannot afford to pay the cost of the liens and now escalated construction costs of rebuilding their demolished home.

4. In the case of Joan Fontaine, Ms. Fontaine filed a permit to build a wheelchair ramp and then was told she had to rebuild the foundation to her home. This requirement was a violation of the Ex-Post-Facto clause of Article One, Section Ten of the US Constitution since the Fontaine house was built during the 1950's when building codes and permits were not required in Lake County, and an imposition of new building codes on a building that was constructed in the 1950's is a flagrant violation of the Ex-Post-Facto clause discussed above. Joan Fontaine was then given 24 hours to obtain permits for rebuilding her foundation, and 48 hours to remove all of the furniture and personal property from the house. She had to dispose of all her furniture and most of her personal property. She was also told that she could not live in the building while the foundation was under construction, even though cribbing or a temporary structural beams were

1   placed under her house to hold the house in a level and stable condition while

2   construction was underway. Joan Fontaine was also told that she had to remove all of the

3   doors and windows from the house while the foundation was under construction. Most

4   Contractors and engineers find that the structural stability of a temporary support

5   structure to hold up a house while the foundation is being rebuilt is just as stable as a

6   permanent foundation, and does not require the homeowner to move out of the building.

7   This requirement to remove the furniture and all of the doors and windows added an

8   additional $ 19,000.00 dollars to the cost of the construction. At one point she was told

9   that she would have to remove her wood-burning stove because of the negative impact

10  that stove would have on air quality. Anyone travelling to the Fontaine property will

11  notice that virtually every house in her neighborhood has a wood-burning stove and a big

12  pile of firewood on the front porch or front yard. In addition, Code Enforcement saw

13  some feathers that had leaked from a down vest and told her that they believed that the

14  white feathers were toilet paper and that they believed she was defecating in her yard.

15  Consequently, Code enforcement told Ms. Fontaine that they were going to hire a

16  hazardous materials team to remove the human excrement that they knew was on her

17  land, even though they had no direct or indirect evidence of this, at a cost of $ 5,000.00,

18  which would be billed to her in the form of a lien against the property, which she would

19  eventually have to be paid as part of the property tax bill or, if she could not pay for it,

20  the property would be sold in a tax foreclosure sale. An affidavit, signed by Joan

21  Fontaine is attached and incorporated by reference as **Exhibit A**. Joan Fontaine's house

22  was bulldozed a few weeks ago, in violation of the state laws that require the County to

23  file a civil case against the property owner and litigate the case in front of a judge and a

24  jury. The County did this in spite of the fact that Joan Fontaine had just filed a Civil suit

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in the Superior Court for Just Compensation of the property under the California Constitution, which mandates that the county reimburse the land owner ***before*** the destruction or taking of the subject property. The fact that Joan Fontaine's house was bulldozed after she filed a civil case was filed in Lake County Superior Court is solid evidence that the policy of demolition without judicial due process is alive and well in Lake County and is solid proof that Lake County Officials know that their cozy relationship with Lake County Judges and their history of bribing judges in Lake County gives them a level a bravado to ignore any civil process that is filed in the State Court system. Given the recent demolition of the Joan Fontaine home in a substantially similar context, no one can say that the threat to demolish the Shanko House is speculative or conjecture or unripe or that the demolition of the Ronald Shanko House is contingent on an unforseeable event in the future. **It should be obvious in the wake of the destruction of the Joan Fontaine House and her storage building in the last 30 days, that the demolition of the Shanko house is an absolute certainty. The only thing preventing the Defendants from moving aggressively to demolish the Shanko House is this lawsuit.** If this lawsuit is dismissed, the building will be destroyed. The Defendants have absolutely no respect for the rights and freedoms and Constitutional guarantees established under the State and Federal Constitution. It should be further noted that the Joan Fontaine storage building was demolished without any legal foundation, even though that structure is less than 200 square feet and can be built without permits under Lake County Building Codes.

5. I obtained building permits approximately six years ago and began the construction of a small residential structure in Lake County California at 15320 May

Complaint For Damages Page 6

Hollow Road, in Lower Lake, California. Recently the building inspectors became more aggressive and demanded that I remove my temporary housing, a small mobile home located on the property. Under Lake County ordinances a temporary travel trailer can be used for temporary housing when building permits have been issued by Code Enforcement. I have identified several people who have lived in travel trailers or other forms of temporary housing for extended periods from 7 years to 20 years, while they are building their homes, see **Exhibit B**, a Declaration signed by a local homeowner, attached and incorporated by reference.

6. In June of this year the Code Enforcement officials, named above, held an abatement hearing in front of the Lake County Board of Supervisors, demanding that I file for new permits, which I did. They demanded that comply with a new requirement: that I include plans for a sprinkler system, which I did. After I paid the fees for the new permits, Code enforcement officials told me that the existing structure was deficient, and needed different windows and a higher quality siding and thus the existing structure was not built in compliance with newer building codes that have been recently adopted, which of course violates the Ex- Post-Facto Clause of the US Constitution under Article One, Section Ten of the US Constitution. They stated that they were intending to have the building bulldozed. These Code Enforcement officials did not provide me with any option for making corrections to the building. The only option that they considered was the bulldozer.

7. The above-cited actions taken were in violation of their own codes and ordinances, the Federal and State civil rights statutes and any moral standards of decency,

and humanity that most decent people would adhere to. The edict from Code

Enforcement regarding the so called abatement of the nuisance by bulldozing my

partially built house amounts to a ban on construction after having issue building permits,

and is unreasonable and is a violation of all economically uses of the land upon which I

am building the subject house. The Defendants will effectively deny me all viable

economical uses of the land for a home in Lake County, as established by the ruling by

the US Supreme Court in Lucas v. South Carolina Coastal Council, 505 U.S. 1003; 112

S. Ct. 2886; 120 L. Ed. 2d 798, (1992). It is thereby established that the Defendants, have

no right to summarily deny all economically viable uses of land, and cannot destroy my

partially built building without judicial due process of law. It should be further noted that

the Plaintiff was, at all times, willing to make whatever adjustments and changes to the

construction of the subject property are necessary to comply with the code or the

Defendants interpretation of the Code. This willingness to comply with requested

changes fell on deaf ears and was refused by the Defendants, who stubbornly refused to

listen to reason.  Under the Fourth Amendment the government cannot seize property

unless it reasonable and only when it is supported by oath or affirmation. Under the

Fourteenth Amendment the government cannot take property without due process of law.

It should be further noted that the Defendants also attempted to order the removal of

chickens and horses until they realized that the zoning ordinances allowed for farm

animals in my region of Lake County. This shows a propensity to engage in Gestapo style

tactics that amount to willful oppression to make people feel discouraged and fearful of

Code Enforcement. This is emblematic of the hidden agenda that the Defendants have

applied in order to make me become discouraged and feel defeated as a strategy to force

me to walk away from the land and give up my construction project.

1

2    **A. VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT**

3          8. *I ask for injunctive relief only in regard to the unlawful actions complained*

4    *of herein,* **whereby the defendants have refused to renew my permits because of**

5    **allegations that I have not complied with building codes and that the existing**

6    **partially built structure is considered by them to be substandard. This allegation of**

7    **substandard construction is without any foundation in fact, since the building**

8    **inspectors at Code Enforcement have approved every part of the existing structure**

9    **during their inspections, and, consequently, their statements that the existing**

10   **structure is substandard is a direct contradiction of their own prior inspections and**

11   **approvals**. Violation of the Takings Clause of the Fifth Amendment, will occur in this

12   matter when the Defendants bulldoze my partially constructed home in violation of the

13   state laws, that require the County government to litigate the issue of abatement of the

14   alleged nuisance in a civil case before they can demolish a building because it is a

15   nuisance. The Defendants are planning to take all economical and viable uses of land. In

16   Lucas v South Carolina Coastal Council, 505 U.S. 1003; 112 S. Ct. 2886; 120 L. Ed. 2d

17   798, (2014), the US Supreme Court stated that the government cannot take away all

18   economically viable use of land, without just compensation. The actions complained of

19   above, are just such a taking of all economically viable use of land, since the County

20   government is issuing an administrative decree, wherein they are preparing to prevent me

21   from use of the land as a primary home and domicile, which is the only economically

22   viable use of the land and the only use anyone could make of the land.

23

24

25

26   **B. PLANNED VIOLATIONS OF DUE PROCESS RIGHTS, FOURTH**

27

28

**AMENDMENT RIGHT TO BE FREE OF UNREASONABLE SEIZURES OF PROPERTY**

9. The California Supreme Court ruled in <u>STRUMSKY v. SAN DIEGO COUNTY EMPLOYEES RETIREMENT ASSOCIATION</u>, 11 Cal.3d 28, at page 44, 520 P.2d 29, 112 Cal.Rptr. 805, 39 Cal. Comp. Cases 924 (Calif Sup Court 1974) that administrative agencies, such as the Lake County Board of Supervisors cannot function in a judicial capacity. As a result any administrative order by the Lake County Board of Supervisors related to the loss of more than one hundred thousand dollars worth of property rights, lost labor and materials and complete loss of all economically viable use of the land would have to be part of a judicial process, rather than an administrative process, because of the ruling in Strumsky, supra, Camil v. Buena Vista Cinemas, supra and Leppo v. The City of Petaluma, 20 Cal App. 3d 711. Neither Code Enforcement, nor their employees and their manager, nor the Lake County Board of Supervisors can function in a judicial capacity, see Strumsky v. San Diego, 11 Cal.3d 28, at page 44, 520 P.2d 29, 112 Cal.Rptr. 805, 39 Cal. Comp. Cases 924 (Calif Sup Court 1974).  This is also a violation of the due process clause of the Fourteenth Amendment by failing to employ a judicial process. Their administrative actions are not objectively reasonable and require judicial review. Municipalities in California cannot make decisions that require judicial determinations, see CAMIL, v. BUENA VISTA CINEMA, 57 Cal.App.3d 497, 129 Cal.Rptr. 315 (Court of Appeal, Second District 1976.).

1    　　　　10. The California Court of Appeal in their decision in Camil v Buena Vista

2    Cinemas, supra stated that summary abatements of adult films of an obscene character

3    cannot be accomplished without a judicial determination. I believe that the same standard

4    must be applied in this matter. The summary abatement of the adult films by a

5    municipality is analogous to summary abatement of the construction of building where

6    the municipality has already issued permits, and then acts in bad faith to abate the

7    construction project as a nuisance. In Camil v. Buena Vista, supra, the right to free

8    speech is implicated, in my case the right to enjoy private property free from

9    unreasonable seizures and destruction of a partially constructed home is implicated. In

10   both cases the due process clauses of the Fourth and Fourteenth Amendment is being

11   violated. In both cases the government is attempting to deny a right, guaranteed under the

12   constitution, to judicial due process. The Court in Camil v. Buena Vista Cinemas stated

13   as follows: **"The first and foremost requirement is a judicial determination, prior to**

14   **abatement, of the obscene character of the films under prevailing law. Patently the**

15   **City Council could not, by ordinance, adopt its own definition of obscenity and even**

16   **the most formal administrative proceeding to determine the issue of obscenity,**

17   **under prevailing law, could not suffice as a substitute for a judicial determination.**

18   **Further, the Council's** Resolution that particular films were obscene would not be

19   binding on the court in any abatement proceedings instituted thereafter. **Neither**

20   **summary abatement nor temporary injunction is constitutionally permissible as a**

21   **remedy in this type of abatement proceedings.** (N)o injunctive relief, whether

22   temporary or permanent in nature, may be afforded until defendant has been given a full

23   and fair judicial hearing on the issue of obscenity, and an opportunity to obtain prompt

24   judicial review of that issue by the state appellate courts.' (People ex rel. Busch v.

25   Projection Room Theater et al., supra, 16 Cal.3d at p. 375, 128 Cal.Rptr. at p. 239, 546

26   P.2d at p. 743.) Here the trial court quite properly denied plaintiff's motion for a

27   temporary injunction." [Page 503]. (Emphasis added.]

28

11. This case is filed in order to exercise my rights under Title 42, Section 1983, which provides for redress of grievances where there has been deprivation of rights under color of authority. The District Court also has supplemental jurisdiction over any state law claims pursuant to Article Three of the Constitution for the United States of America, since the state-law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the US Constitution, pursuant to Title 28, USC Section, 1367. We know of no instance in which Camil v. Buena Vista Cinemas, supra, Leppo v. City of Petaluma or Strumsky, cited above have been overturned.

12. Furthermore, under the Fourth and Fourteenth Amendments to said Constitution, the Defendants have no standing to interfere with my private use of land and deprive me of my liberty without a reasonable objective criterion to prevent me from building a home and threaten to bulldoze the subject property, especially when they are not properly exercising the police powers of government, exceeding their authority, and acting in bad faith under their County municipal government framework.

13. Recently, a Federal Judge in San Francisco issued an order granting an injunction against Lake County Officials in which the Judge cited Leppo v. The City of Petaluma, 20 Cal App. 3d 711. In Mona Allen, et al  v. County of Lake, et al, Case number 14-cv-03934-TEH the judge stated, in his injunction as follows:

"The question, upon review of a state approved search or seizure is not whether the search (or seizure) is authorized by state law. The question

is whether the search was reasonable under the Fourth Amendment." Id. The same restrictions apply to local government.

California state law is in accord with this federal constitutional requirement. Leppo v. City of Petaluma, 20 Cal App 3d 711, 718-719, (1971). A local government typically "has statutory power, vested in its governing body, to declare and abate public nuisances. But neither at common law nor under such express power can it, by its mere declaration, that specified property is a nuisance, make it one when in fact it is not. Id. At 718 quoting (14 A.L.R. 2d 82). Even where a local government correctly identifies and classifies a nuisance, summary abatement may only be used in narrow circumstances. "[I]n emergency situations the City may act summarily to abate a nuisance, but in such case, the city must be prepared, by a preponderance of evidence, that an emergency actually existed." Id at 719.

14. I see no evidence of an exigent circumstance nor have Lake County Officials made a case for exigent circumstances.

15. The named Defendants identified above, BRANDON HOLLERAN, MICHAEL LOCKETT, RICHARD COEL and THE LAKE COUNTY COMMUNITY DEVELOPMENT DEPARTMENT and LAKE COUNTY BOARD OF SUPERVISORS violated my rights under the due process clause of the Fourteenth Amendment to the US Constitution on 24TH of June 2014, at a date when the Board of Supervisors held a hearing to discuss the building permits issued for my home. At that time the Board of

Supervisors told me I could have 30 days to "show progress" on continuing to build the house, which I did. Richard Coel lied to the Board of Supervisors stating that I had built a 'shack' that was not part of the plans, which was not true. The building inspectors approved the construction of the alleged "shack" at every phase of construction. Richard Coel has a reputation for using hyperbole in public meetings at the Board of Supervisors. They subsequently refused to renew my building permits and threatened me with demolition, see **Exhibit C**, a notice of their intention to abate a nuisance posted at my property, and a declaration. The walls in that part of the house are built according to the plans and in accordance with the building codes at the time that they were built. The Defendants never supplied any admissible evidence of an exigent circumstance.

16. I purchased lumber and I added two outside walls to the existing structure. I also completed some plumbing underneath the floor. Additionally, I finished a subfloor structure on the main story. BRANDON HOLLERAN came to inspect the structure 29 days later, instead of the 30 days guaranteed under the Board of Supervisors Decree, after the Board of Supervisors meeting and issued a Red Tag, and ordered me to stop building the structure, even though I met the stated requirements that were imposed upon me by the Board of Supervisors to "show progress", see **Exhibit D**, attached and incorporated by reference, a Written Notice issued by Code Enforcement declaring their intention to demolish my partially constructed building. It appears that the visit by BRANDON HOLLERAN was intended to terminate the building permits regardless of what progress I made on the structure, **as an act of bad faith by both the Board of Supervisors and the LAKE COUNTY COMMUNITY DEVELOPMENT DEPARTMENT.** Brandon Holleran never inspected the subject building on that day but just posted the abatement

notice and left. I know several other homeowners who were given many years longer than I have been given to complete their construction project. These other homeowners are willing to testify in court. The actions taken and described above are a clear and unequivocal plan to take of all economically viable uses of the land without just compensation in violation of the Fifth Amendment, see Lucas v. South Carolina Coastal Council, 505 U.S. 1003; 112 S. Ct. 2886; 120 L. Ed. 2d 798, (1992), stating that the government cannot deny all economically viable uses of land.  I had inspections every 180 days since the building permits for parcel number 122-012018 were issued for a single family dwelling with a covered porch on October 20, 2008. The Permit number is 08-09-0037.

**C. VIOLATION OF EQUAL PROTECTION RIGHTS.**

17. One of these homeowners was given seven years to complete the construction of their home and the other was given 20 years to complete construction of their home. Both homeowners were told they could live in a trailer or other temporary living quarters while they worked on the project. I have to be accorded the same property rights as others who are similarly situated, otherwise this administrative order violates my rights to equal protection of the laws.

18. On June 24th, 2014, I was told by the Board of Supervisors that I could not live in a temporary structure, a mobile home, while I worked on the project and that the county would use a bulldozer to destroy the temporary structure if I did not remove the

temporary structure, a mobile home. This order violates the Due Process clause and equal protection clause of the Fourteenth Amendment.

## D. VIOLATION OF THE WARRANT CLAUSE UNDER THE FOURTH AMENDMENT.

19. This administrative decree issued by the Board of Supervisors, if it in fact leads to the destruction of my partially constructed home, and it is not accompanied by a warrant, supported by oath or affirmation will be a violation of the Warrant Clause of the Fourth Amendment, which makes it unlawful to seize persons or property without a warrant, supported by oath or affirmation, see Kalina v. Fletcher, 522 US 118, (1999); US v. Vargas-Amaya, 408 F.3d 1227 (**Ninth Circuit Court of Appeals**, 2005); *Groh* v. *Ramirez,* 124 S. Ct. 1284 (2004), in which the Supreme Court recently affirmed that every warrant must meet the requirements of the Warrant Clause, and be based upon probable cause, supported by oath or affirmation. *Id*. at 1289-90; *see also Albrecht* v. *United States,* 273 U.S. 1, 4-6 (1927); and Ex Parte Burford, 7 US 448 (US Supreme Court, 1806). This will be a violation of the due process clause of the Fourteenth Amendment by failing to employ a judicial process, which is not objectively reasonable, see CAMIL, v. BUENA VISTA CINEMA, 57 Cal.App.3d 497, 129 Cal.Rptr. 315 (Court of Appeal, Second District 1976.); Leppo v. City of Petaluma, supra. Houses are mentioned in the first clause of the Fourth Amendment in reference to a prohibition against unreasonable searches and seizures. I believe that the order to remove the

1   temporary housing is an unreasonable seizure within the meaning of the Fourth

2   Amendment.

3

4   **E. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

5

6      20. As the Staff Attorneys at the LAKE COUNTY OFFICE OF COUNTY

7   COUNSEL either knew or should have known, there is a requirement for that agency to

8   provide notice and opportunity of a court process to a person who's home is about to be

9

10  bulldozed regarding what law he is charged with violating and the cause and particulars

11  of the alleged violations. The threats of destruction of my home by way of a bulldozer in

12  Lake County without due process constitutes intentional infliction of emotional distress,

13  which resulted in high anxiety because of my continuing fear of destruction of my

14  temporary and permanent home, and destruction of all viable uses of land and loss of my

15  housing. The loss of someone's home is probably the most emotionally traumatic events

16  in a persons life. Only someone like Adolf Hitler or officials in the Gestapo would regard

17  the loss of someone's home as less than traumatic, and irreparable harm.  The use of the

18  30 day window to show progress was a cruel joke, designed to crush dreams and destroy

19  peoples spirit, and has no connection to preserving any public interest, but only a private

20  interest by the Board of Supervisors to exercise a sadistic need to force people to their

21  knees financially and destroy the dream of home ownership and make sure people are

22  terrified of their government.  The ultimate goal of the Board of Supervisors is to acquire

23  property and sell it in tax foreclosure auctions. **In addition, it should be further noted,**

24  **that the unrestrained exercise of police power without judicial supervision supplies**

25  **the government agency with virtually unlimited power to exceed their authority and**

violate peoples rights so there can be no security or real freedom to enjoy property without the threat of unrestrained and completely arbitrary police powers. This is the exact opposite of the vision of personal freedom and personal responsibility that the founding fathers had when they created the American Constitution and the bill of rights. Without the supervision by the courts this unbridled police power can be used with tremendous detrimental effect on the people that have created a government that appears to be unresponsive, inaccessible and oppressive.

## III. VENUE

21. Venue is proper in this district pursuant to 28 U. S.C. § 1391 (b) and (c). The Defendants reside in this district, a substantial part of the events and errors and omissions giving rise to the claim occurred in this district, and a substantial part of the property that is the subject of the action is situated in this district.

## IV. JUDICIAL STANDARDS OF REVIEW

22. The incident that was used to form the basis of the threat to bulldoze the subject property does not meet the requirements under California law that requires judicial due process, see Strumsky, supra, Leppo v. Petaluma, supra and Camil v. Buena Vista Cinemas, supra, *and is in violation of the Plaintiff's common law rights to be free of an unreasonable seizures of private property, especially when there is no warrant supported by oath or affirmation, as discussed above,* as required by the Fourth Amendment to the Constitution for the United States of America, see Ex Parte Burford, 7 U.S. 448, (1806); Kalina v. Fletcher, 522 U.S. 118, (1997); *Groh* v. *Ramirez,* 124 S. Ct. 1284 (2004), in

1   which the Supreme Court recently affirmed that every warrant must meet the

2   requirements of the Warrant Clause, and be based upon probable cause, supported by

3   oath or affirmation. *Id.* at 1289-90; *see also Albrecht* v. *United States,* 273 U.S. 1, 4-6

4   (1927) (holding an arrest warrant invalid because it was issued based upon affidavits

5   which had been sworn to before an official "not authorized to administer oaths in federal

6   criminal proceedings"). Thus, where a warrant is issued unsupported by oath or

7   affirmation, it is invalid under the Fourth Amendment. *See United States* v. *Rabe,* 848

8   F.2d 994, 997 (9th Cir. 1988) (explaining that the Warrant Clause "requires the

9   government to establish by sworn evidence presented to a magistrate that probable cause

10   exists to believe that an offense has been committed").

11

12

13   23. In Kalina v. Fletcher, supra, the US Supreme Court stated the Fourth Amendment

14   requirements as follows: "The Fourth Amendment requires that arrest warrants be based

15   "upon probable cause, supported by Oath or affirmation" -- a requirement that may be

16   satisfied by an indictment returned by a grand jury, but not by the mere filing of criminal

17   charges in an unsworn information signed by the prosecutor. Gerstein v. Pugh, 420 U.S.

18   103, 117, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975); see also Coolidge v. New Hampshire,

19   403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971)." It is clear that the Fourth

20   Amendment makes reference to people being secure in their houses, and that the Fourth

21   amendment prohibits seizures of property without a warrant supported by oath or

22   affirmation under the warrant clause of the Fourth Amendment, cited above. None of the

23   inspection or demolition warrants issued in Lake County Superior Court are supported by

24   oath or affirmation.

25

26

27

28

24. At issue is the validity of the threatened destruction of the Plaintiff's Property, the partially built home discussed above, and immediate need by the Plaintiff for injunctive relief. Also, there was no warrant or criminal complaint which was based on sworn facts, that can be used to comply with the warrant clause within the meaning of the Fourth Amendment to the Constitution For The United States of America, and the Fourth Amendment to the U.S. Constitution. Based upon the foregoing citations of law the Fourth Amendment requirements for a sworn complaint signed under oath, as discussed, have not been met. The phrase "things..... to be seized" in the text of the Fourth Amendment to the Constitution for the United States of America, and the Fourth Amendment to the US Constitution makes it clear that private property, such as a partially constructed building cannot be seized within the scope of the Fourth Amendment without that court order and warrant to seize such a building having an ancillary document, which is supported by oath or affirmation. We can see from discussion of the Joan Fontaine case, cited above, that Lake County does not ever take the abatement case through a judicial process. This was true in the case of Joan Fontaine. Instead, they obtain the type of warrant that is used when there is an emergency, without supporting the allegations by oath or affirmation.

24. As stated above, there is also a **Due Process Violation.** As the Staff Attorneys at the LAKE COUNTY OFFICE OF COUNTY COUNSEL, who are typically tapped to advise the LAKE COUNTY COMMUNITY DEVELOPEMENT DEPARTMENT, either knew or should have known, that people working in law enforcement have a duty to seize

1  property only when they can justify the seizure in the context of the circumstances and

2  facts and within the framework of the laws in California. I have a right to due process of

3  law, which means that the government cannot seize private property without due process

4  of law, see Lynch v Household Finance, 405 US 538 (1972), which states;

5

6           "Such difficulties indicate that the dichotomy between personal

7           liberties and property rights is a false one. The right to enjoy property

8           without unlawful deprivation, no less than the right to speak or the right to

9

10          travel, is in truth a "personal" right whether the "property" in question be a

11          welfare check, a home, or a savings account. In fact a fundamental

12          interdependence exists between the personal right to liberty and the

13          personal right in property. Neither could have meaning without the other.

14          That rights in property are basic civil rights has long been recognized. J.

15          Locke Of Civil Government 82- 85(1924); J. Adams A Defense of the

16

17          Constitutions of Government of the United States of America, in F. Coker

18          Democracy, Liberty and Property 121-132 (1942); 1 W. Blackstone,

19          Commentaries 138-140."

20

21      25. I am relying upon a decision issued by the Ninth Circuit Court of Appeals, in

22  which they state that the warrant clause of the Fourth Amendment applies in the context

23  of a custodial arrest where there is a warrant issued or the equivalent, see US v. Vargas

24  Amaya, 408 F.3d 1227(Ninth Cir, 2005). Although the Vargas Amaya case is a criminal

25

26  case, the warrant clause is equally applicable to the seizure of property.

27

28

26. **Prohibitions of a Seizure of Private property without due process is a constitutional mandate that all departments of state and county government are required to adhere to.** As the Staff Attorneys at the LAKE COUNTY OFFICE OF COUNTY COUNSEL, who supply legal advice and support to Lake County agencies of government, either knew or should have known, there is a requirement for all Departments to honor and uphold the American Constitution pursuant to their oath of office.

27. **The Defendants and all of them, also engaged in Intentional Infliction of Emotional Distress.** As the Defendants and the Staff Attorneys at the LAKE COUNTY OFFICE OF COUNTY COUNSEL, who provides legal advice to Lake County agencies, either knew or should have known, there is a requirement for the LAKE COUNTY COMMUNITY DEVELOPMENT DEPARTMENT to litigate this matter in a judicial process before they can abate a nuisance, see Camil v. Buena Vista Cinemas, supra, Leppo v. City of Petaluma, supra and Strumsky v. San Diego, supra.

28. The actions taken by the Defendants set aside these requirements and sought immediate destruction of the Plaintiff's private property in order to make certain that people are terrified of their government, and to use intimidation and fear to enforce their unconstitutional exercise of police powers in this matter in violation of Constitutional mandates, which creates a great deal of intentional infliction of emotional distress, primarily because these actions complained of are a violation of the Fourth and Fourteenth Amendments to the US Constitution.

29. It is clear that none of the circumstances preceding the threat of demolition of the subject building in this matter justified a reasonable case for an exigent circumstance. The aggressive behavior and attitudes of the Defendants and the aggressive tendencies and reckless disregard for the law on the part of Rick Coel's propensity to violate people's rights triggered the decision to begin an abatement process. Whatever their purpose in abatement of their alleged nuisance, this purpose did not negate Fourth Amendment guarantees. In the absence of any substantive violation of building codes and zoning laws that can be identified, **my interests in personal security and protecting my investment of thousands of dollars in the building materials and the land and many hours of my labor, I have a right to seek redress of grievances under the First Amendment to the US Constitution and Injunctive relief under Title 28, US Code, §§ 2201 and 2202.** The fiduciary duty of government, particularly in light of the commitments made by way of the Defendants Oaths of Office, imposes a requirement for the Defendants to refrain from interference with lawful conduct and to avoid interference with basic personal freedoms that are guaranteed to every human being. There is no security or safety for the property owner in Lake County from willful oppression and abuses of police power.

30. I reserve all my unalienable rights and remedies and wave no rights.

31. COMES NOW the Plaintiff, Ronald Shanko, a private man, in my private capacity, and states as follows:

### V. PARTIES

32. I, the Plaintiff, Ronald Shanko, am appearing in my private capacity, am a member of the private sector of America and not an officer of any government or an officer of any private corporation privileged to exist by any government, but a free inhabitant of the many nations existing here upon this land in North America and not resident in the United States nor in any of its political subdivisions.

33. Defendants named, who were acting beyond the scope of their official role, who violated my rights as discussed above, and who are poised to violate my rights guaranteed under the Fourth, Fifth and Fourteenth Amendments to the US Constitution as discussed are named herein. LAKE COUNTY COMMUNITY DEVELOPMENT DEPARTMENT, CODE ENFORCEMENT DIVISION is named in this civil action in their capacity as a policy setting agency, an agency who sets policy for the Staff and building inspectors in the Department, and established custom and policy for their department and those under their direct supervision and control, in direct and flagrant defiance of the Fourth Fifth and Fourteenth Amendments, by establishing the policy of: (1.) willful oppression and aggressively preventing private inhabitants from building a home on private land and violating the Fourth Amendment by attempting to seize property in an unreasonable manner without due process of law, required under the Fourteenth Amendment to the US Constitution and without a warrant, supported by oath or affirmation as required under the Fourth Amendment by threatening destruction of the subject property; (2.) and giving the Plaintiff no other options or remedies in this matter. The seizure of the subject property by destruction of it through the use of private contractors and the use of a bulldozer or excavator is a violation of the takings clause established under the Fifth Amendment to the US Constitution; (3.) The Defendants,

RICK COEL, the Director of Code Enforcement, BRANDON HOLLERAN, a building inspector and MICHAEL LOCKET, the Chief Building inspector have adopted of a policy to deliberately setting aside and ignoring the clear rulings in LUCAS V. SOUTH CAROLINA COASTAL COUNCIL, supra, stating that people cannot be deprived of all economically viable uses of land, the Strumsky v. San Diego, supra, ruling that Administrative agencies cannot act in a judicial capacity and Camil v. Buena Vista Cinemas, supra and Leppo v. Petaluma, Supra,  that a judicial determination must be made before an abatement of a nuisance can take place, and Kalina v. Fletcher, requiring a warrant, supported by oath or affirmation, to be signed before any persons or property is seized by the government, and; (4.) setting a policy to apply arbitrary and capricious standards for abatement of a nuisance without application of the standards for review established in Camil v. Buena Vista Cinema, supra, Leppo v Petaluma, supra and Strumsky v. San Diego.

34. Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, *e. g.*, Scheuer v. Rhodes, 416 U. S. 232, 237-238 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U. S. 658, 690, n. 55.

35. On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. See, *e. g.*, Monroe v. Pape, 365 U. S. 167 (1961). More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a " `moving force' " behind the deprivation, Polk County v. Dodson, 454 U.

1  S. 312, 326 (1981) (quoting Monell, supra, at 694); thus, in an official-capacity suit the

2  entity's "policy or custom" must have played a part in the violation of federal law.

3  Monell, supra; Oklahoma City v. Tuttle, 471 U. S. 808, 817-818 (1985); id., at 827-828

4  (BRENNAN, J., concurring in judgment). When it comes to defenses to liability, an

5  official in a personal-capacity action may, depending on his position, be able to assert

6  personal immunity defenses, such as objectively reasonable reliance on existing law. See

7  Imbler v. Pachtman, 424 U. S. 409 (1976) (absolute immunity); Pierson v. Ray, 386 U. S.

8  547 (1967) (same); Harlow v. Fitzgerald, 457 U. S. 800 (1982) (qualified immunity);

9  Wood v. Strickland, 420 U. S. 308 (1975) (same). In an official-capacity action, these

10  defenses are unavailable. Owen v. City of Independence, 445 U. S. 622 (1980); see also

11  Brandon v. Holt, 469 U. S. 464 (1985).

12

13        36. The only immunities that can be claimed in an official-capacity action are

14  forms of sovereign immunity that the entity, *qua* entity, may possess, such as the

15  Eleventh Amendment. While not exhaustive, this list illustrates the basic distinction

16  between personal- and official-capacity action. Monell v. New York City Dept. of Social

17  Services, 436 U. S. 658 (1978), overruled Monroe v. Pape, 365 U. S. 167 (1961), insofar

18  as *Monroe* held that local governments were not among the "persons" to whom 42 U. S.

19  C. § 1983 applies and were therefore wholly immune from suit under the statute. THE

20  COUNTY OF LAKE is named as the policy setting entity for The LAKE COUNTY

21  COMMUNITY DEVELOPMENT DEPARTMENT CODE ENFORCEMENT

22  DIVISION AKA CODE ENFORCEMENT. LAKE COUNTY COMMUNITY

23  DEVELOPMENT DEPARTMENT, CODE ENFORCEMENT DIVISION is named in

24  this case because the other Defendants acted under the authority of LAKE COUNTY

25  CODE ENFORCEMENT, which establishes custom and policy for the Building

26  Inspectors, since they have management control or supervisory control over the other

27  Defendants. In addition, it is increasingly obvious, that the steps and procedures that are

28

employed by CODE ENFORCEMENT are policies that have been established by the County Board of Supervisors, because the procedure always involves at least one hearing with the County Board of Supervisors and the County Department heads are hired and terminated by the County Board of Supervisors and the overall policy of each department is formulated by the Board of Supervisors.

## VI. FIRST CAUSE OF ACTION

**(Injunctive Relief** from Planned Violation of The Fourth Amendment, Unreasonable Seizure clause, Warrant Clause, Fourteenth Amendment Due Process Clause, California Constitution, Article Six, Section One)

**Against all Defendants**

37. The Plaintiff restates and incorporates by reference all of the allegations otherwise set forth in this Complaint in the preceding paragraphs.

38. This Complaint requests injunctive relief for the threat of the violation of the Fourth Amendment, demolition of the subject Building located on May Hollow Road, described above. The Defendants either knew or should have known that they have a duty to the permit holder to work with them when there is a perceived or actual deviation from the building codes and to allow them to made adjustments to their use of building materials and remedy any defects in the building with changes to the construction techniques, or materials, instead, the Defendants have insisted that they can only remedy the perceived or actual violations of the building codes with abatement and destruction of the subject property, rather than allowing me to make corrections. In addition, I Ronald

Shanko am the builder of the subject building and I have many years of experience as a construction carpenter and is a seasoned professional, and I have, in many cases more experience and working knowledge of construction techniques and methods that many of the contractors I have worked for, and I have more experience in the construction field than most if not all of the building inspectors and staff at Lake County Code Enforcement.

39. The Defendants named in this complaint have exceeded their authority, acted outside the scope of their authority, violated my rights and violated the law, by claiming to have powers to seize property without due process guarantees that are established under state and federal law as discussed above. The Defendants have threatened immediate demolition of the home I am building and without adhering to or being faithful to the Fourth Amendment and their own administrative rules and state statutes, which prohibit such actions, where the seizure is not reasonable. Due process rights, guaranteed under the Fourth Amendment are violated by a regulatory agency when the agency and its staff do not obey the mandates of the Fourth Amendment as follows: (1.) Under the first part of the Fourth Amendment, the government cannot seize property unless it is reasonable, since the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated and the seizure is not reasonable because it is being done without reference to any of the requirements under state law, such as judicial due process in accordance with Strumsky v. San Diego, supra, Leppo v. City of Petaluma, Supra, and the requirement to give notice and opportunity to make corrections on the building; (2.) The Defendants have failed to comply with the Fourth Amendment warrant requirement, which states: and no warrants shall issue but upon probable cause, supported by Oath or

1    affirmation, and particularly describing the place to be searched and the persons or things to

2    be seized.  Under the states police power, when elements of due process are absent, such as a

3    warrant for a seizure or an arrest or probable cause, the state or county agency cannot

4    exercise these powers.

5

6        40. As discussed the Defendants have threatened to demolish a partially constructed

7    home because of allegations that I have not used the proper construction materials. They

8    have not given me notice and opportunity to make corrections on the subject building,

9

10    choosing instead to demolish the subject partially constructed building in violation of the

11    Fourth Amendment to the Constitution for The United States of America and the Fourth

12    Amendment to the US Constitution. The above demolition was being planned as the original

13    civil action in the above captioned case was being typed and filed. The Fourth Amendment

14    forbids the seizure of property without due process of law and without a warrant supported

15    by oath or affirmation. It should be further noted that the warrant clause requires the warrant

16    to be signed by two people; (1.) by the person taking an oath and (2.) by the person who

17    administers the oath, see Ex Parte Burford, 7 US 448, (1806).

18

19

20        41. These actions taken by the Defendants deprive the Plaintiff of his due process

21    rights as described in federal and state law. I have cited United States v. Lee; 106 US

22    196, 1S. Ct. 240 (1882) where the United States Supreme Court stated that the

23    government cannot deprive the people of property rights without due process of law. To

24    review some of the statements in US v. Lee, supra, the court stated:

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> Shall it be said ... that the courts cannot give remedy when the citizen has been deprived of his liberty by force, his estate seized and converted to the use of the government without any lawful authority, without any process of law, and without any compensation, because the president has ordered it and his officers are in possession? If such be the law of this country, it sanctions a tyranny which has no existence in the monarchies of Europe, nor in any other government which has a just claim to well-regulated liberty and the protection of personal rights."

42. The Supreme Court also reaffirmed the right to enjoy private property and not be deprived of it without due process of law in Lynch v. Household Finance Corp.; 405 US 538 (1972). As discussed the appellate courts in California have also discussed the due process rights of its citizens as described in Strumsky v. San Diego as follows:

> **Because judicial powers may no longer be exercised by 'local agencies,'** the factual findings of those agencies are entitled to no greater deference than those of other agencies lacking judicial powers under the Constitution.

43. The threatened deprivation of personal liberty without due process is clearly a violation of civil liberties as well as personal rights. One of the settled principles of our Constitution is that these Amendments are to protect only against invasion of civil liberties by the government whose conduct they alone limit. Burdeau v. McDowell ; 256 US 465, 41 S. Ct. 574, 65 L Ed. 104813 ALR 1159 (1921); Weeks v. United States; 232 US 383, 34 S. Ct. 341, 58 L. Ed. 652, (1914);Hall v. United States; 41, F 2d 54(9th Cir. 1930); Brown v. United States; 12 F 2d. 926 (9th Cir. 1926). Therefore the organs of government cannot be used to make an unlawful arrest of people and incarcerate them for

1    trespassing when they have consent of an office tenant, who has lawful possession of the

2    subject property.

3

4                              **VII. SECOND CAUSE OF ACTION**

5      **(Declaratory and Injunctive Relief Regarding the Violation Of The Fourteenth**

6                          **Amendment, Equal Protection Clause)**

7      **Against All Defendants**

8

9          44. The Plaintiff restates and incorporates by reference all the allegations otherwise

10   set forth in this Complaint in the preceding paragraphs.

11

12         45. One of the homeowners mentioned previously, was given seven years to complete

13   the construction of their home and the other was given 20 years to complete construction

14   of their home. Both homeowners were told they could live in a trailer or other temporary

15   living quarters while they worked on the project. I have to be accorded the same property

16   rights as others who are similarly situated, otherwise this administrative order violates my

17   rights to equal protection of the laws. I cannot be ordered by the Defendants to refrain

18   from using a travel trailer or other temporary housing for use while my home is under

19   construction, since others similarly situated have lived in travel trailers or other

20   temporary housing for seven to twenty years without incident or challenge and such an

21   arbitrary and capricious policy violates the Equal Protection Clause of the Fourteenth

22   Amendment, see Baker v. Carr, 369 US 186 (1962). In order for the actions taken by the

23   Defendants to be restrained by the court, it must be shown that such actions are clearly

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Cusack v. City of Chicago, 242 US 526, (1917).

46. On June 24th, 2014, I was told by the Board of Supervisors that I could not live in a temporary structure, a mobile home, while I worked on the project and that the county would use a bulldozer to destroy the temporary structure if I did not remove the temporary structure, a mobile home. This order violates the Due Process clause and equal protection clause of the Fourteenth Amendment. As discussed, I am being singled out and am being treated differently from others who were similarly situated and were not told they could not live in a temporary structure. The threat of demolition of my temporary housing, the trailer, without judicial process caused me to give up the trailer, thus causing a loss of my temporary housing, which was calculated to inflict emotional distress and to cause a great deal of hardship on me. The value of my temporary housing is valued at $ 1,500.00 per month which when multiplied by the number of months I have been deprived of temporary housing is valued at $ 13,500.00.

47. These actions taken by the Defendants, described above are described by the United States Supreme Court as tyranny in; <u>United States v. Lee</u>; 106 US 196, 1S. Ct. 240 (1882) where the United States claimed ownership of property via a tax sale some years earlier, the court stated as follows:

> **Shall it be said ... that the courts cannot give remedy**
> **when the citizen has been deprived of his liberty by force, his estate**
> **seized and converted to the use of the government without any lawful**

**authority, without any process of law, and without any compensation,** because the president has ordered it and his officers are in possession? **If such be the law of this country, it sanctions a tyranny which has no existence in the monarchies of Europe, nor in any other government which has a just claim to well-regulated liberty and the protection of personal rights.**" In US v. Lee, supra, the government can be considered as similar and applying in like manner as the defendants in the above captioned case. [Emphasis added.]

48. The above citation in US v. Lee is analogous to the case at bar where the actions taken by the Defendants are tyranny and lack due process of law. The Supreme Court also reaffirmed the right to enjoy private property and not be deprived of it without due process of law in Lynch v. Household Finance Corp.; 405 US 538 (1972). As discussed above, the California appellate courts have made it clear that, based upon a change in the California Constitution at Article VI, Section 1, administrative agencies cannot function in a judicial capacity, Strumsky v. San Diego County Employees Retirement Association, 11 Cal 3d 28, at 44 (Calif Sup Court, 1974), which states:

> Because judicial powers may no longer be exercised by 'local agencies,' the factual findings of those agencies are entitled to no greater deference than those of other agencies lacking judicial powers under the Constitution. [Page 44]

49. As a result of the foregoing the Defendants cannot function in a judicial capacity and by acting in a judicial capacity they have violated my due process rights, depriving me of the right to judicial due process. Artificial completion time limits for construction projects set by the Defendants create a regulation that does not serve any legitimate health and safety concerns for the public. I ask for Declaratory Relief from the Court in

the nature of an order restoring: (a.) my rights to live in a temporary structure, and; (b.) my right to continue building the structure under existing building Codes, and (c.) a Court order that an independent licensed building contractor, at the Defendants expense, supervise the future inspections of the subject property to ensure that the Defendants are not creating arbitrary and capricious requirements that have no relationship with the health and safety of the public and amount to an false claim of defective workmanship and construction materials, see Cusack v. City of Chicago, 242 US 526, (1917), with supervision by the court when there are disputes regarding compliance or other issues.

## IX. THIRD CAUSE OF ACTION

### (Intentional infliction of emotional distress.)

**Against all Defendants**

50. Plaintiff restates and incorporates by reference the statements and allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

51. The loss of ones place to live is probably the most traumatic event in the life of people generally, especially when there are no other options and the loss of a persons living space also takes away the persons means of earning a living.

52. The acts of Defendants described above were all performed under color of law with malice and premeditation, with willful and wanton disregard of Plaintiff's rights under the laws of the United States and California, in contravention of the letter and spirit of 42 U.S.C. 1983.

53. Plaintiff was harmed by said violations, in that Plaintiff suffered great emotional pain and anxiety as a result of the increasingly oppressive actions taken by the Defendants, as well as humiliation, damage to reputation, monetary loss, deprivation of

personal freedoms, loss of ability to fully function as a member of the community, and psychological trauma.

WHEREFORE, Plaintiff seeks relief as set forth below.

## X. RELIEF REQUESTED

WHEREFORE, the Plaintiff prays as follows:

54. That the Court enter judgment that federal constitutional law, specifically the Fourth Amendment, prohibits the unreasonable seizure by demolition, which amounts to confiscation of the subject property by the Defendants without procedural and substantive due process, including judicial process and a warrant, supported by oath or affirmation, signed by two people, one who takes the oath and the other who administers the oath, as discussed. The Defendants engaged in acts, without probable cause, that violate my due process rights and prohibits or impairs the rights to personal freedom that is supposed to be enjoyed by everyone in this country, including, but not limited to the planned violation off my due process rights and Fourth, Fifth and Fourteenth Amendment rights of the Plaintiff wherein the Defendants, without standing or lawful authority of any kind, have engaged in acts of threats of seizure of private property, taking of private property without just compensation and arbitrary and capricious denial of my right to live in temporary housing on my property while construction is proceeding.

55. That the Court enter an order mandating declaratory and injunctive relief that the Defendants lacks jurisdiction and authority to take actions that cause all the loss of all

economically viable use of the land, and must comply with the mandates established by the state and federal appeals court rulings above, especially Leppo v. City of Petaluma, Supra, Strumsky v. San Diego, Cusack v. City of Chicago, supra and Lynch v. Household Finance, supra and that they are prohibited from taking the subject property without judicial due process abatement procedures and just compensation.

56. That the Court enter declaratory judgment that any effort by Defendants to demolish the subject property without judicial due process, a warrant that meets the requirements under the Fourth Amendment, and a notice and opportunity to correct any defects in construction are declared to be unlawful and are enjoined by the court.

57. That the Court award the Plaintiff its cost of suit and all other expenses caused by Defendants to the extent authorized by law and $75,000 (seventy-five thousand dollars) in silver coin, silver specie or the equivalent in modern circulating currency for interfering with Plaintiff's private life and private property and intentional infliction of emotional distress to be divided equally by all defendants.

58. For the egregious acts of violation of my rights I demand punitive damages from RICK COEL FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND MALICE in the amount of 75,000 silver one ounce coins minted in the United States of America, or the equivalent in modern circulating currency, And for the egregious acts of violation of my rights I demand punitive damages from LAKE COUNTY FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND MALICE in the amount of $ 25,000 silver one ounce coins minted in the United States of America, or the equivalent in modern

circulating currency, And for the egregious acts of violation of my rights I demand

punitive damages from BRANDON HOLLERAN FOR ENGAGING IN ACTS OF

OPPRESSION, FRAUD AND MALICE in the amount of 25,000 silver one ounce coins

minted in the United States of America, or the equivalent in modern circulating currency,

And for the egregious acts of violation of my rights I demand punitive damages from

MICHAEL LOCKET  FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND

MALICE in the amount of  25,000 silver one ounce coins minted in the United States of

America, or the equivalent in modern circulating currency.


59. That the Court award Plaintiff a permanent court order of cease and desist as

requested herein.


60. That the Court grant the Plaintiff such other relief as the Court may deem

proper, and leave to amend the complaint as needed.

Dated On the _____(date).


By_____

         Ronald Shanko

1
2
3
4
5
6
7
8

## Verification

9
10
11      I have read the *COMPLAINT FOR DEPRIVATION OF RIGHTS UNDER COLOR*
12 *OF AUTHORITY AND DECLARATORY AND INJUNCTIVE RELIEF* and know the contents
13 thereof to be true; and the same is true of my own knowledge, except to the matters which
14 are therein stated on my information and belief, and as to those matters I believe them to be
15 true. The foregoing is true, correct, complete and not misleading.
16
17 Sealed by the voluntary act of my own hand on this_____(date) in
18 the fourth century of the Independence of America.
19
20
21 _____
22   Ronald Shanko
23
24
25
26
27
28

1    circulating currency, And for the egregious acts of violation of my rights I demand

2    punitive damages from BRANDON HOLLERAN FOR ENGAGING IN ACTS OF

3    OPPRESSION, FRAUD AND MALICE in the amount of 25,000 silver one ounce coins

4    minted in the United States of America, or the equivalent in modern circulating currency,

5    And for the egregious acts of violation of my rights I demand punitive damages from

6    MICHAEL LOCKET  FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND

7    MALICE in the amount of  25,000 silver one ounce coins minted in the United States of

8    America, or the equivalent in modern circulating currency.

9

10

11    59. That the Court award Plaintiff a permanent court order of cease and desist as

12    requested herein.

13

14    60. That the Court grant the Plaintiff such other relief as the Court may deem

15    proper, and leave to amend the complaint as needed.

16

17    Dated On the ___4 - 6 - 2015_____ (date).

18

19    By _____

20          Ronald Shanko

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8

## Verification

9
10
11      I have read the *COMPLAINT FOR DEPRIVATION OF RIGHTS UNDER COLOR*

12   *OF AUTHORITY AND DECLARATORY AND INJUNCTIVE RELIEF* and know the contents

13   thereof to be true; and the same is true of my own knowledge, except to the matters which

14   are therein stated on my information and belief, and as to those matters I believe them to be

15   true. The foregoing is true, correct, complete and not misleading.

16
17   Sealed by the voluntary act of my own hand on this 4-6-2015 (date) in

18   the fourth century of the Independence of America.

19
20
21   _____

22   Ronald Shanko

23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBITS LIST

**Exhibit A**        **Declaration of Joan Fontaine**

**Exhibit B**         **Declaration of a Home Owner Who lived in a Trailer for Seven Years while he built his home.**

**Exhibit C**        **Copy of a Notice Posted of a Nuisance Abatement and Lake County's Intent to Demolish the Ronald Shanko House, a Declaration regarding the posting of an abatement notice.**

# EXHIBIT A

# Affidavit of Joan Fontaine

I, Joan Fontaine, the affiant, lived at a home at 10337 Pinewood Way, Whispering Pines, California when it became necessary for me to have a wheelchair ramp built for my mother. I applied for building permits with Lake County Department of Community Development and was told by building inspectors that I needed to replace the foundation of my home, which was built before permits were required. They also ordered me to remove all of the doors and windows from my home and remove all furniture and personal property. I was in the process of rebuilding the foundation and the Lake County Code Enforcement Department threatened to demolish my home with a bulldozer. I was also told that they were going to demolish my storage building that was not required to be built with permits. I went before a judge in Lake County with a Petition for Writ of Mandamus and was given a short extension of time to replace the foundation. I was told by an engineer that the foundation could be replaced. I do however need more time for the construction of the new foundation. These events occurred in 2012 through 2014. I just received a notice from the Code Enforcement Department of their plans to demolish my home in 11 days, and that the matter is not appealable. I am currently living in another location in Lake County while the above house foundation is under construction. The foregoing statements are made under penalty of perjury, and if called as a witness I am willing to testify.

Date: _February 12, 2015_

_Joan Fontaine_

Joan Fontaine

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate
is attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _Lake_

Subscribed and sworn to (or affirmed) before me on this _12th_
day of _February_, 20_15_, by

_____John Fontaine_____,
proved to me on the basis of satisfactory evidence to be the
person(s) who appeared before me.

M. MARTINELLI
COMM. #1952501
Notary Public-California
LAKE COUNTY
My Comm. Exp. OCT 14, 2015

(Seal)                    Signature _M Martinelli_

# EXHIBIT B

# Affidavit of Gary Bradrick

I, Gary Bradrick, the affiant, lived in a temporary travel trailer for seven years from 2002 until 2009, while I completed construction on my home at 2944 Indian Hill Road, Clear Lake Oaks, California. I renewed the building permit once during that time. I am currently living in the home at the above address.

The foregoing statements are made under penalty of perjury, and if called as a witness I am willing to testify.

Date:___2/11/15_____

_____
Gary Bradrick

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA

County of _Lake_

Subscribed and sworn to (or affirmed) before me on this _11_ day of _Feb_,
20_15_, by

_Gary D Bradrick_,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_Sharon Bassham_                                    (Seal)
Signature

SHARON BASSHAM
COMM. # 2096109
NOTARY PUBLIC - CALIFORNIA
LAKE COUNTY
COMM. EXPIRES FEB. 3, 2019

Notary - Jurat General

# EXHIBIT C

1

2

3    Ronald Shanko
     In Care of
4    15320 May Hollow Road
     Lower Lake, California [95457]

5

6               In the District Court of the United States
7                   for the Northern District of California

8

9    Ronald Shanko,
     Private Attorney
10   General, Plaintiff          Case No. 14-cv-055.13-JST

11

12

13              vs.             **DECLARATION OF**
                                **WENDY WOODWARD**
                                **REGARDING BRANDON**
14                              **HOLLERAN'S**
                                **INSPECTION OF THE**
15                              **HOUSE UNDER**
                                **CONSTRUCTION AT**
16                              **15320 MAY HOLLOW**
                                **ROAD**
17                              **ON JULY 22, 2014**

18   LAKE COUNTY AKA COUNTY OF
     LAKE, LAKE COUNTY
19   DEPARTMENT OF COUMMUNITY
     DEVELOPMENT,
20   BRANDON HOLLERAN, in his
     official and private capacity,
21   MICHAEL LOCKETT, in his
     official and private capacity,
22   RICHARD COEL, in his
     official and private capacity,
23   DOES 1-20 inclusive
                                Title 42, US Code,
24                              Section 1983

25            Defendants        Trial by Jury Demanded

26   _____/

27

28

     Declaration of Wendy Woodward   Page 1

1. I, Wendy Woodward, have first-hand knowledge of the events and actions taken by Brandon Holleran when he came to 15320 May Hollow Road in Lower Lake 29 days after June 24th, 2014. I am not a party the within action and am willing to testify if called as a witness. I am over the age of 18 years and competent in all regards to testify in this matter and I am not suffering from any mental disability.

2. Mr. Brandon Holleran came to the front gate at 15320 May Hollow Road, Lower Lake California, 29 days after June 24th, 2014, where there is a chain link fence surrounding the property. The gate is locked and the gate would have to be opened by Mr. Ron Shanko or myself if Mr. Brandon Holleran, a Lake County Code Enforcement Building Inspector, were to ask to be let into the property to inspect the property. Brandon Holleran did not ask to be allowed to enter the property in order to inspect the partially constructed building at 15320 May Hollow Road, Lower Lake, California. The Lake County Board of Supervisors at their weekly Board of Supervisors meeting on June 24th, 2014 ordered Lake County Code Enforcement to inspect the subject property at 15320 May Hollow Road, Lower Lake, California, exactly 30 days from the meeting on June 24th, 2014. I, Wendy Woodward or Ronald Shanko would have let Bandon Holleran into the property to inspect the subject unfinished building at 15320 May Hollow Road, Lower Lake California, if he had asked to be allowed onto the property to inspect the building at 15320 May Hollow Road, Lower Lake, California. Mr. Brandon Holleran taped a Red Tag Stop Work Order notice on the Gate quickly and left in his Lake County Code Enforcement vehicle immediately after the posting of the Red Tag Stop Work Order Notice on the Gate. If the sound of barking dogs had not been heard by us as

Declaration of Wendy Woodward    Page 2

Brandon Holleran was walking up to the gate we would not have noticed him posting the Red Tag Stop Work Order notice on the gate.

3. The foregoing statements are made under penalty of perjury and if called as a witness I am willing to testify.

Respectfully Submitted,

Date: 4 - 6 - 15

Wendy Woodward

Declaration of Wendy Woodward     Page 3

## CALIFORNIA JURAT WITH AFFIANT STATEMENT

State of _Calf_ }

County of _Lake_ } ss.

☒ See Attached Document (Notary to cross out lines 1-8 below)
☐ See Statement Below (Lines 1-7 to be completed only by document signer[s], *not* Notary

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____
7. _____
8. _Wendy Woodward_

Signature of Document Signer No. 1 _____    Signature of Document Signer No. 2 _____

Subscribed and sworn to (or affirmed) before me this _6_ day of _April 2015_, _____, by

(1) _Wendy Woodward_

(2) _____

proved to me on the basis of satisfactory evidence to be the person(s) who appear before me.

_Sharon Bassham_
Signature of Notary Public

**SHARON BASSHAM**
COMM. # 2096109
NOTARY PUBLIC - CALIFORNIA
LAKE COUNTY
COMM. EXPIRES FEB. 3, 2019

Place Notary Seal above

_____ **OPTIONAL** _____

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: _____

Document Date: _____   Number of Pages: _____

Signer[s] Other than above: _____

RIGHT THUMBPRINT
OF SIGNER #1
Top of thumb here

RIGHT THUMBPRINT
OF SIGNER #2
Top of thumb here

Ronald Shanko
In Care of
15320 May Hollow Road
Lower Lake, California [95457]

## In the District Court of the United States
## for the Northern District of California

Ronald Shanko,
Private Attorney
General, Plaintiff

Case No. _14·cv-05543-JST_

vs.

**DECLARATION OF
RONALD SHANKO
REGARDING BRANDON
HOLLERAN'S
INSPECTION OF THE
HOUSE UNDER
CONSTRUCTION AT
15320 MAY HOLLOW
ROAD
ON JULY 22, 2014**

LAKE COUNTY AKA COUNTY OF
LAKE, LAKE COUNTY
DEPARTMENT OF COUMMUNITY
DEVELOPMENT,
BRANDON HOLLERAN, in his
official and private capacity,
MICHAEL LOCKETT, in his
official and private capacity,
RICHARD COEL, in his
official and private capacity,
DOES 1-20 inclusive

Title 42, US Code,
Section 1983

Defendants

Trial by Jury Demanded

_____/

Declaration of Ronald Shanko    Page    1

1. I, Ronald Shanko, have first-hand knowledge of the events and actions taken by Brandon Holleran when he came to 15320 May Hollow Road in Lower Lake 29 days after June 24th, 2014. I am willing to testify if called as a witness. I am over the age of 18 years and competent in all regards to testify in this matter and I am not suffering from any mental disability.

2. Mr. Brandon Holleran came to the front gate at 15320 May Hollow Road, Lower Lake California, 29 days after June 24th, 2014, where there is a chain link fence surrounding the property. The gate is locked and the gate would have to be opened by Ms. Wendy Woodward or myself if Mr. Brandon Holleran, a Lake County Code Enforcement Building Inspector, were to ask to be let into the property to inspect the property. Brandon Holleran did not ask to be allowed to enter the property in order to inspect the partially constructed building at 15320 May Hollow Road, Lower Lake, California. The Lake County Board of Supervisors at their weekly Board of Supervisors meeting on June 24th, 2014 ordered Lake County Code Enforcement to inspect the property at 15320 May Hollow Road, Lower Lake, California exactly 30 days from the meeting on June 24th, 2014. I, Ronald Shanko or Wendy Woodward would have let Bandon Holleran into the property to inspect the subject unfinished building at 15320 May Hollow Road, Lower Lake California if he had asked to be allowed onto the property to inspect the building at 15320 May Hollow Road, Lower Lake, California. Mr. Brandon Holleran taped a Red Tag Stop Work Order notice on the Gate quickly and left in his Lake County Code Enforcement vehicle immediately after the posting of the Red Tag Stop Work Order Notice on the Gate. If the sound of barking dogs had not been

Declaration of Ronald Shanko     Page     2

heard by us as Brandon Holleran was walking up to the gate we would not have noticed him posting the Red Tag Stop Work Order notice on the gate.

3. The foregoing statements are made under penalty of perjury and if called as a witness I am willing to testify.

Respectfully Submitted,

Date: 4-6-2015

Ronald Shanko

Declaration of Ronald Shanko    Page    3

## CALIFORNIA JURAT WITH AFFIANT STATEMENT

State of ___Cali___  }

County of ___Lake___  } ss.

☒ See Attached Document (Notary to cross out lines 1-8 below)
☐ See Statement Below (Lines 1-7 to be completed only by document signer[s], *not* Notary

_____

2 _____

3 _____

4 _____

5 _____

6 _____

7 _____

8 _____

_Ronald R. Sha_

Signature of Document Signer No. 1              Signature of Document Signer No. 2

Subscribed and sworn to (or affirmed) before me this __6__ day of __April 2015__ _____, by

(1) __Ronald Shanko__

(2) _____

proved to me on the basis of satisfactory evidence to be the person(s) who appear before me.

_Sharon Bassham_

Signature of Notary Public

**SHARON BASSHAM**
COMM. # 2096109
NOTARY PUBLIC - CALIFORNIA
LAKE COUNTY
COMM. EXPIRES FEB. 3, 2019

Place Notary Seal above

_____ **OPTIONAL** _____

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Further Description of Any Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer[s] Other than above: _____

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |



# STOP WORK

Lakeport
263-2382

### COUNTY OF LAKE
### BUILDING & SAFETY DEPARTMENT

## NOTICE

PURSUANT TO SECTION 114.1 OF
THE CALIFORNIA BUILDING CODE
AS ADOPTED BY ORDINANCE
AMENDING CHAPTER 5 SECTION
14.4 OF THE LAKE COUNTY CODE,
ALL WORK SHALL STOP
IMMEDIATELY.

✓ PERMITS REQUIRED

____ PREVIOUS WORK NOT APPROVED

____ ZONING VIOLATION

____ OTHER _____

Building Official _____

DATE: 7-24-14

## DO NOT REMOVE THIS NOTICE



**COUNTY OF LAKE**
COMMUNITY DEVELOPMENT DEPARTMENT
Building & Safety Division
Courthouse - 255 N. Forbes Street
Lakeport, California 95453
Telephone 707/263-2382 FAX 707/263-2225

November 18, 2014                                                **Certified Mail**

Ronald Shanko & Carol Engels
15320 May Hollow Rd
Lower Lake CA 95457

RE:     Nuisance Conditions; APN 122-012-18, 15320 May Hollow Road, Lower Lake

**Attachment:  Summary of Property Conditions from Inspection on 11/07/2014**

Dear Mr. Shanko & Ms. Engels:

This letter is an update to the letter dated October 31, 2014.  Pursuant to your request to seek approval of a renewal of a building permit to continue work on the dilapidated, partially completed residence after all notice and order timelines had lapsed, the staff from the Community Development Department inspected the structure to determine the extent of non-compliance with California Building Codes.  On November 4, 2014 the Chief Building Official and Building Inspectors met you on site and proceeded to inspect the structure.  A description of their findings is attached. In summary, the work that you have completed does not meet code, is severely weathered and cannot be salvaged.  Also, the foundation is "honeycombed" and does not appear to be structurally capable of supporting the proposed 2-story dwelling.  The only solution is for the unfinished, substandard structure to be demolished.  Building a residence upon the work completed is not possible. As a result, the Community Development Department is unable to issue a building permit to complete the unfinished residence.

**This letter serves as your final notification that the Community Development Department is moving forward with abatement of your property located at 15320 May Hollow Road, Lower Lake, as a result of your failure to comply with the Notice of Nuisance and Order to Abatement upheld by the Lake County Board of Supervisors on June 24, 2014.** The Notice and Order provided you with a deadline of July 24th to substantially abate the nuisance condition on your property. Because you removed the unpermitted mobilehome, the Community Development Director granted you an additional 30 days to complete the abatement, by the end of August, 2014. However, you failed to obtain the building permit required to continue with construction of your residence and complete said construction, you installed another travel trailer on the property after having removed the previous travel trailer, and you continued to work on the house construction without the required permit. In addition, it appears that you are again occupying the site.

Shanko, 5320 May Hollow Road, Lower Lake                              Page 1



FOUNDATION PLAN *REVISED

8-22-08

LARGER SCALE
PLAN VEIW

Copy 10/25/12 kp

"J" BOLTS

STEM WALL

FOOTING SHADED
4x6x6" ON PIERS

PIERS
6 FT OC.

INTERMEDIATE
PIERS

6 FT ON CENTER

12'

24"

12"x12" PIERS

PORCH

4x6

PT-LEDGER

AT 16"

2x6

LUS26
HANGERS

PT STRINGERS

METAL

BOTTOM OF STEPS
CONCRETE PAD

SCALE
1" = 1 FT

PIERS WITH 4x6 PERLIN ON TIP
SET IN CONCRETE

MIN. 18"x18" (CB-1804-L)
12" DEEP

CAUTION

Read the attached Plan Correction Sheet. The marked items apply to these plans and are part of the approved plans.
Do not remove Plan Correction Sheet from these plans.
C&C section 106.3.1

TIED REBAR CROSSES AND BENDS INTO FOOT

5/8" E.J. "J" BOLT

8"

18"

12"

2 IN STEM 2 IN FOOT

1/2" REBAR

UNDIS-TURBED SOIL

SCALE
1" = 1 FT

SCALE
1" = 1 FT

20FT.H